FORET, Judge.
The defendant, Vaughn C. Edwards, appeals the judgment of the trial court rendered against him and in favor of First National Bank of Lafayette (FNB) in the amount of $88,767.88. The material issue in this appeal is FNB’s entitlement to the damages sought and the reasonableness of the damages awarded. We affirm the judgment of the trial court.
On January 8, 1982, FNB entered into a three-year lease with the defendants, Gran-ger Machine Works, Inc., Wilbur Granger, and Vaughn C. Edwards, for certain movable equipment owned by FNB. The rent was to be paid in quarterly installments of $16,865.63 for the first and second quarters, $10,221.70 for the third and fourth quarters, and $9,341.24 for the fifth through twelfth quarters. The rent was due on the eighth day of every third calendar month.
Under the terms of the lease, if the lessee failed to pay within five days of the date when due, he would be obligated to pay 18% per annum on any sums which were past due. Lessee was also bound to pay 25% of the amount due as attorney’s fees for the collection of past due rental and enforcement of the terms and conditions of the lease. In the event the lessee failed to pay the rent due within ten days after the lessor made demand for payment, the lessee would be considered as being in default of the lease.
The default provisions of the lease expressly provide that:
*984 “(b) Lessee agrees that: (1) upon the expiration of this lease, or, (2) the commission of any of the acts of default set forth in this lease, that, within five days after receipt of notice of the termination, default, or breach, delivered by registered or certified mail at the Lessee’s address shown on the lease contract or the Lessee’s last known address, or within five days of mailing of such notice, whichever is earlier, the Lessee shall, at the sole option of the Lessor, surrender possession of the leased movable to the Lessor, by delivering it at Lessee’s expense, packed and ready for shipment, to such place or carrier as Lessor may specify.
Additionally, the Lessee hereby agrees and consents to the Lessor, at any time, taking possession of the leased property if the Lessee fails to surrender such, wherever the leased property be located, and may enter upon any premises of the Lessee, whether owned or leased, for this purpose.
(c)Upon any default, Lessor shall have the right, at its option, but shall not be obligated, to do any one or more of the following: (1) in addition to the right granted herein, and by law, to sequester the leased property, upon the Lessee’s failure to surrender it or the Lessee’s voluntary surrender of the leased property, the Lessor may sue for and the Lessee hereby specifically agrees and consents to the payment of all of the rentals then due, plus any and all future rentals under the lease contract; (2) the Lessor may sue for, and the Lessee agrees to pay an amount in liquidated damages equal to the amount of the rent thereafter accruing under the lease contract from the time of default until the termination of the lease agreement, had the Lessee not defaulted in or breached the performance of the lease agreement; (3) Lessor may institute any rule or proceeding for sequestration, or seizure of the leased equipment, or take possession of any and all of the equipment, wherever it may be located, without demand or notice, with or without any court order of other process of law, and without incurring any liability to the Lessee for any damages occasioned by such taking of possession; (4) Lessor may sell at private sale any and all of the equipment for cash or on credit and then file an ordinary proceeding to recover from Lessee all of the costs of taking possession, storing, repairing, and selling of the equipment, plus an amount representing liquidated damages in the sum of the rental payments thereafter accruing under the terms of the lease until the termination of the lease, had the Lessee not defaulted on the lease obligation, less the net proceeds of such sale; (5) Lessor may terminate this lease as to any or all items of equipment; (6) if Lessor elects to terminate this lease as to any or all items of equipment, to recover from Lessee as to each item subject to termination the worth at the time of termination, of the excess, if any, the amount of rent reserved herein for that item for the balance of the term hereof over the then reasonable rental value of the item for the same period of time; (7) Lessor may pursue any other remedy now or hereafter existing at law or in equity.
(d) Notwithstanding any action taken by Lessor including taking possession of any or all of the equipment, Lessee shall remain liable for the full performance of all its obligations hereunder.
(e) In addition, Lessee shall pay to Lessor all costs and expenses incurred by Lessor in exercising any of its rights or remedies hereunder including the payment of reasonable attorney fees to be fixed at 25% of the amount owed to Lessor including the past due rentals, plus those rentals thereafter accruing until the termination of the lease agreement, or of liquidated damages, or the sum of $100, whichever is more.”
FNB filed suit on June 6, 1983, to recover past due rents and to recover possession of the property leased. The defendants were given notice of their default on March 23, 1983, in a letter demanding payment of sums past due. FNB’s petition alleged *985 that the defendants were in default of the lease for having failed to pay three quarterly installments of rent totalling $29,-784.64, plus 18% interest. In addition, FNB demanded the sum of $56,047.44 representing future rentals due under the lease term from the date of acceleration, April 3,1983. FNB also prayed that a Writ of Sequestration be issued. The writ was issued and the property repossessed pursuant to the writ and the provision of the lease.
Edwards, a co-defendant, answered generally, denying the allegations of the petition and asserted, as an affirmative defense, that the act of lease executed by the bank was an ultra vires act. (FNB obtained a judgment by default against Wilbur Granger.)
FNB subsequently filed its Motion for Summary Judgment with accompanying affidavits. Edwards submitted an affidavit to the Court attesting to the fact that the equipment had been sold by FNB. The trial court heard arguments on the motion and granted judgment on the motion in favor of FNB.
The defendant relies heavily upon the case of Ouachita Equipment Rental Co., Inc. v. Baker Brush Co., 388 So.2d 477 (La.App. 2 Cir.1980), as authority for its position that a lessor may not demand liquidated damages in the form of future rentals if it has seized and sold the movables and that a summary judgment was inappropriate in this instance.
We find nowhere in Ouachita any mandate that a trial on the merits must be conducted in cases in which liquidated damages, as provided for in a lease, are demanded by a lessor. A summary judgment is appropriate in any case, except as provided by law, in which the mover can show that there is no genuine issue as to material fact and that he is entitled to judgment as a matter of law. C.C.P. Article 966.
We believe that Ouachita and LSA-R.S. 9:3261 et seq. govern only the determination of reasonableness of the liquidated damages demanded, not a party’s entitlement to those damages if a lease expressly provides for such damages. The fact situation in Ouachita is almost identical to this case, and that court held that not only could the lessor repossess and sell the leased equipment, as provided in the lease, but in addition, it could then sue to recover the liquidated damages stipulated in the lease, subject only to the court’s determination that they were reasonable.
FNB had the right to repossess and sell the equipment and had the right to demand future rentals for the remainder of the lease term as liquidated damages in the event of default.[1]
Edwards did not produce any evidence that he did not execute the lease, that payment had been made according to the lease terms, or that FNB did not have the right to demand liquidated damages under the express provisions of the lease. In our opinion, Edwards did not present any evidence that a genuine issue of material fact existed and that mover was not entitled to judgment as a matter of law.
The only issues left before the trial court after Edwards’ response were the alleged ultra vires acts of the bank and the reasonableness of the damages demanded by FNB.
“As a general rule an act that is ultra vires of a national bank cannot be pleaded by a party to the transaction, but only by the government against the bank. It cannot be pleaded by one benefited by the ultra vires act complained of.”
United States Securities Corp. v. Exchange Nat. Bank of Shreveport, 130 So. 818, 820 (La.App. 2 Cir.1930). See also State Nat. Bank v. Flathers, 12 So. 243 (La.1892).
Based on the above cited case, we find that this defense asserted by Edwards is without merit.
*986 This leaves for consideration by the trial court the reasonableness of the damages awarded. FNB was willing to accept an amount calculated in accordance with the formula enunciated in Ouachita, (determining total investment of the plaintiff by adding the purchase price to the costs involved in the sale minus all rent paid and any sums recovered from the sale), in lieu of the amount demanded in their petition, if the trial court found that sum to be unreasonable[2]. The trial court rendered judgment in the amount of $88,767.88, based upon the Ouachita formula, but refused to grant FNB the 25% attorney’s fees as provided by the lease. FNB has not answered the appeal, thus, the issue of attorney’s fees is therefore not before us in this appeal.
Our review of the record leads us to conclude, as did the trial court, that the evidence presented by the defendant in his response to the motion for summary judgment did not establish that any genuine issue of material fact existed for a trial on the merits.
Accordingly, the judgment of the trial court in favor of FNB for the sum of $88,767.88 and against Vaughn C. Edwards is hereby affirmed.
Costs of this appeal are assessed against defendant-appellant.
AFFIRMED.

. See Lease Agreement (c), supra, page 984.

. $134,925.00 Purchase Price of Equipment
$ 24,156.25 Costs of repossession and sale
$159,081.25 Total Investment
Less: $71,365.03 Received by First National Bank of Lafayette as rent
$39,200.00 Received from sale of equipment
$110,565.03 Total Credit
$ 48,516.22 Net Liquidated Damages
$ 29,784.64 Past due rentals
$ 78,300.86 Net Loss
$ 10,467.02 Plus 18% interest as per Lease
$ 22,101.97 Plus 25% attorney’s fees as per Lease
$110,959.85 [sic] Total Due First National Bank of Lafayette